IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CONNIE L. HENSON | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:14cv847 |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

On November 9, 2015, Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Commissioner's final decision is **AFFIRMED** and the above-styled lawsuit is **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on September 12, 2012 alleging a disability onset date of June 8, 2012. The application was denied on November 7, 2012, and again on reconsideration on January 14, 2013. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). An ALJ conducted a video hearing on September 9, 2013, and issued an unfavorable decision on October 8, 2013, concluding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on September 30, 2014. As a result, the ALJ's decision became that of the

Commissioner. Plaintiff then filed this lawsuit on November 9, 2014, seeking judicial review of the Commissioner's decision.

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix 1. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his October 8, 2013 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since June 8, 2012, the alleged onset date (20 CFR § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar disc disease, diabetes, and obesity (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for 6 hours in an 8-hour workday, and stand and walk for at least 2 hours out of an 8-hour workday, limited by the option to alternate sitting and standing at 30 minute intervals. The claimant is limited to no climbing ladders, ropes or scaffolds, and only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. She should avoid exposure to hazards, such as unprotected heights, fast moving machinery, sharp objects and open flames; prolonged exposure to temperature extremes, and concentrated exposure to vibration. Because of the potential effects of pain, the claimant should not be required to understand, remember and carryout complex instructions.

6. The claimant is capable of performing past relevant work as a data entry operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 8, 2012, through the date of this decision (20 CFR 404.1520(f)).

## ADMINISTRATIVE RECORD

Plaintiff alleges a disability onset date of June 8, 2012. Her date of birth is October 9, 1957 and she graduated from high school. Her past relevant work includes employment as a correctional guard, data entry operator and ticketer.

Plaintiff testified at her hearing before the ALJ on September 9, 2013. She testified that she cannot work because her back hurts constantly. She described a steady pain with occasional sharp pains running down her back to her tailbone, hip and right leg. Plaintiff stated that she cannot sit for more than 15 to 20 minutes before she needs to get up and move around. She constantly repositions herself. Plaintiff testified that she also cannot stand more than 15 to 20 minutes before experiencing sharp pain. Plaintiff stated that she had back surgery with Dr. Gordon, but it did not really help. After her surgery she took hydrocodone for approximately two months, but she stopped taking it because it made her drowsy and did not help her pain.

Plaintiff testified that Dr. Gordon told her to use a cane to assist with going from a chair to standing and vice versa because her leg was giving out on her. When she tried walking after her surgery she experienced severe pain in her lower back and hip. Plaintiff stated that she got steroid shots into her hip. She cut her walking down to about 50 yards at a time. Plaintiff does not cook very much because she cannot stand for a long time and cannot lift heavy pots. Plaintiff opined that her doctor may put her on insulin because she has had more trouble with her diabetes due to the steroid shots and pain that she suffers. Plaintiff stated that she had a lot of trouble with her right leg going out on her, but it has been better more recently. Plaintiff testified that prior to having her back condition, she was very active and worked full-time.

A vocational expert witness, Suzanne Skinner, also testified at Plaintiff's hearing. Ms. Skinner testified that Plaintiff's work history for the previous 15 years includes employment as a (1) correctional officer, DOT 372.667-018, medium work activity, semi-skilled, SVP 4; (2) data entry operator, DOT 203.582-054, sedentary, semi-skilled, SVP 4; and (3) ticketer, DOT 652.685-098, light, semi-skilled, SVP 3. Presented with a hypothetical individual of advanced age with a high school education and Plaintiff's work experience who can lift and carry up to 10

pounds occasionally and less than 10 frequently, sit up to 6 hours out of an 8-hour day, perform standing and walking of at least 2 hours in an 8-hour day, with a need to alternate sitting and standing at 30 minute intervals, with no climbing ladders, ropes or scaffolds and only occasional climbing of ramps or stairs, balancing, kneeling, crawling, crouching and stooping, who should avoid exposure to hazards such as unprotected heights, fast-moving machinery, sharp objects and open flames, as well as prolonged exposure to temperature extremes and concentrated exposure to vibration, who should not be required to understand, remember or carry out complex instructions, Ms. Skinner testified that the individual could perform Plaintiff's past work as a data entry operator. Ms. Skinner also stated that the use of a cane at times for ambulation would not interfere with the performance of that job. If, however, the individual is limited to sitting no more than 15 minutes at a time or 1 hour total in a workday, that would preclude the ability to perform that job and any other job to which the individual's skills would transfer. Ms. Skinner opined that a need to rest in a seated or lying position for 15 minutes at a time after engaging in standing or walking would not affect the ability to do that job. She also stated that an individual could not maintain the job if she consistently misses work 1-1/2 days per month or is off task more than 5 minutes per hour. Finally, Ms. Skinner testified that she is not aware of any conflict between her testimony and the Dictionary of Occupational Titles.

  Plaintiff received medical care at the Elkhart Medical Center from Larry E. Burch, DO. At a visit on June 8, 2012, Plaintiff complained of back pain radiating down both legs. Plaintiff's medications included Actos, Glipzide, Metformin, Omeprazole and Welchol. She had a blood pressure of 152/90. Dr. Burch added prescriptions for Lortab and Zanaflex. Plaintiff's diagnoses included lumbar degenerative disc disease, diabetes mellitus, uncomplicated, Type II, hypercholesterolemia, and obesity.

Plaintiff was referred to Charles R. Gordon, M.D. Dr. Gordon examined Plaintiff on June 19, 2012. On examination, Dr. Gordon noted a little paraspinous spasm and weakness into the extensor halluces longus on the right. An MRI from June 8, 2012 showed a disc protrusion at L4–5, as well as a slight spondylolisthesis at this level and edema in the facets. Dr. Gordon opined that if Plaintiff were to have surgery, it would be a microdiscectomy and a total facetectomy with an instrumented fusion to stabilize her at L4–5. Plaintiff agreed with the surgical plan and Dr. Gordon performed the surgery on July 19, 2012.

Plaintiff returned to Dr. Gordon three weeks after surgery and reported severe pain following an incident in which she twisted, lost her balance and fell over to the left side. She received trigger point injections in her left hip. On September 5, 2012, Dr. Gordon noted that Plaintiff was better after her TLIF (transforaminal lumbar interbody fusion). Plaintiff stated that she was still having some left leg pain, but her back pain was better and she felt that her leg was improving. Plaintiff's neurological examination revealed normal mental status, normal cranial nerves, 5/5 strength throughout, 2+ bilaterally symmetric reflexes, and downgoing toes. Dr. Gordon did not detect any weakness on exam. Plaintiff's CT looked "quite favorable" and her rod, screws, and cage were in good position.[1]

At an office visit with Dr. Burch on September 18, 2012, Plaintiff complained of severe right leg pain, especially when trying to bend or squat, and she requested an extension on her work release. She returned to Dr. Gordon on October 29, 2012 and reported still having some back and leg pain. Dr. Gordon noted, however, that she was making progress. He continued her on her home exercises and current medications. Dr. Gordon opined that Plaintiff should not return to her job as a prison guard.

---

[1] *See* Administrative Record, ECF 15-6, at *239.

On January 21, 2013, Plaintiff reported having a rough time with pain in her back and down her right leg. On examination, she was negative for Homans' sign, but had positive right straight leg raising. Dr. Gordon stated that he would like to get a better evaluation with a hardware block, Doppler and plain films of the lumbar spine. Plaintiff had a negative duplex venous sonogram of the right lower extremity with no evidence of deep venous thrombosis. X-Rays of the lower spine revealed a stable appearance with right-sided pedicle fixation of L4–5. Fixation hardware was in good position and the spine was well aligned. On the same date, Dr. Gordon signed a letter stating:

> This is a letter to confirm my opinion as discussed in the office today. I think that you are disabled and unable to return to any sort of gainful employment. I fully support your bid for disability.

*See* Administrative Record, ECF 15-6, at *330. He also signed a Work Status form to excuse Plaintiff from work starting on January 21, 2013.

On April 19, 2013, Dr. Gordon completed a Residual Functioning Capacity form. Dr. Gordon opines that Plaintiff can sit for 15 minutes before alternating her posture by walking, she needs to stand or walk for 15 minutes before returning to sitting, she can only sit for 1 hour total in an 8-hour workday, she can only stand or walk for a total of 30 minutes before alternating her posture to sitting, she needs to sit or lie down/recline for 15 minutes before returning to standing or walking and she can only stand or walk for a total of 1 hour in an 8-hour workday. Dr. Gordon further opined that Plaintiff would need to lie down or recline during an 8-hour workday during a morning break, lunch period and an afternoon break at approximately 2 hour intervals to relieve pain. Dr. Gordon estimated that the total cumulative amount of time Plaintiff would need to rest during a workday is 1 hour. Further, Dr. Gordon concluded that Plaintiff could frequently lift and carry 1–5 pounds, occasionally lift and carry 6–10 and 11–20 pounds and rarely or never

9

lift and carry 21–50. She can frequently perform forward flexion, backward flexion and rotation left and right and frequently perform reaching, handling and fingering on the left and right.

At a return visit on July 15, 2013, Dr. Gordon noted that imaging studies and a hardware block were not done back in January 2013 due to insurance issues. Plaintiff complained of back pain, bilateral hip, buttock and leg pain and tailbone pain. Plaintiff reported only taking Tylenol for her pain. Dr. Gordon noted that Plaintiff appeared to be in a moderate amount of pain and discomfort and she had some pain with palpation across the lower lumbar spine. He also stated that she had some give-way weakness in the lower extremities and was using a cane. Plaintiff could not proceed with any further workup or diagnostic studies due to insurance and financial issues.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff identifies two issues for review:

(1) Whether the ALJ applied the proper legal standard when assessing the opinion of her treating physician; and

(2) Whether the ALJ applied the proper legal standard when stating that she can perform past relevant work or adjust to new work.

**Plaintiff's Residual Functional Capacity**

The first issue raised by Plaintiff arises out of the ALJ's RFC finding. Plaintiff asserts that the ALJ's opinion erroneously afforded little weight to the opinion of Plaintiff's treating physician, Dr. Gordon. Plaintiff complains that the ALJ failed to clarify any confusion he had about Dr. Gordon's assessment and did not afford weight to Dr. Gordon's determination that she must rest and cannot stand or walk more than 3 hours in an 8-hour workday. According to Plaintiff, the ALJ dismissed the well-documented, well considered and reasonable opinions of her treating physicians.

In this case, after finding that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, the ALJ identified the following severe impairments: lumbar disc disease, diabetes, and obesity. He then found that Plaintiff's impairments did not meet or medically equal a listed impairment. At that point, the ALJ considered Plaintiff's residual functional capacity.

In finding that Plaintiff could perform sedentary work with specifically identified additional limitations, the ALJ thoroughly summarized the medical evidence of record, Plaintiff's function reports and Plaintiff's testimony at the hearing, including Plaintiff's testimony as to her symptoms and limitations. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms. In light of the medical history and evidence, however, he concluded that Plaintiff's allegations concerning the intensity and persistence of her physical pain and the limitations her impairments have on her ability to work are not entirely substantiated. The ALJ noted that Plaintiff has not required an inordinate amount of treatment following her July 2012 surgery. The medical record does not support the need for a cane or other assistive device. Diagnostic testing does not show that her surgery was unsuccessful. On the contrary, the most recent X-Ray of the lumbar spine showed stable appearance with right-sided pedicle fixation of L4–5. The ALJ explained that Plaintiff is not treated with insulin for her diabetes and she weaned herself off of pain medication. The ALJ considered Plaintiff's activities of daily living and the fact that Plaintiff has not shown a need for medical treatment since April 2013, which was less than 1 year following her back surgery.

In assessing the opinion of Dr. Gordon, the ALJ stated that he assigned little weight to Dr. Gordon's opinion regarding Plaintiff's ability to perform work activities. He explained that Dr. Gordon's opinion concerning Plaintiff's residual functional capacity is not supported by

clinical and laboratory findings. He also noted that Plaintiff exhibited an ability at her hearing to sit longer than Dr. Gordon opined that she could. The ALJ agreed with Dr. Gordon's opinion that Plaintiff cannot return to her work as a prison guard, but determined that the record as a whole shows that she can perform a wide range of sedentary work.

The ALJ properly considered Plaintiff's complaints of pain and symptoms. In determining whether pain is disabling, the courts give deference to the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1384–85 (5th Cir. 1988). The Commissioner, as opposed to the Court, is the fact finder and the Commissioner may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1991). The ALJ must consider subjective evidence of pain, but it must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). A claimant's testimony of pain and limitations, standing alone, is insufficient to establish disability. *See* 42 U.S.C. § 432(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability."). "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to

produce the level of pain or other symptoms alleged." *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)).

Here, the ALJ's decision considers Plaintiff's testimony and her complaints concerning her pain and functional limitations. The ALJ determined that Plaintiff's subjective allegations concerning her pain and the severity of her limitations are not consistent with or fully supported by the objective medical record as a whole. The ALJ properly considered the intensity, duration and limiting effects of Plaintiff's symptoms.

Generally, considerable weight is given to the opinions of treating physicians. 20 C.F.R. § 404.1527. "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citation omitted)). "Good cause for abandoning the treating physician rule includes disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995)). In addition, statements by any of the medical sources concluding that a plaintiff is disabled, unable to work or unable to perform or resume any job activity are not entitled to any special significance because the ultimate decision of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d at 455–56; SSR 96–5p. This is a legal conclusion, as opposed to a medical opinion, that is reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In this case, the ALJ fully explained his reasoning for affording little weight to Dr. Gordon's April 19, 2013 assessment of Plaintiff's ability to perform work activities and he applied the correct legal standard in assessing the opinion. Dr. Gordon's opinion is not supported by the objective medical evidence in the record or Dr. Gordon's treatment notes. His opinion is not consistent with Plaintiff's activities or behavior at her hearing. Plaintiff faults the ALJ for not expressly commenting on each factor of 20 C.F.R. § 404.1527(c), but the ALJ's opinion provides adequate reasons for discounting Dr. Gordon's conclusions. *See Rollins v. Astrue*, 464 Fed.Appx. 353, 356 (5th Cir. 2012). The ALJ provided specific, appropriate reasons for giving little weight to Dr. Gordon's residual functional capacity assessment. In addition, Dr. Gordon's prior opinion on January 21, 2013 is a conclusory statement of the ultimate decision of whether Plaintiff is disabled; a decision reserved for the Commissioner. *Newton v. Apfel*, 209 F.3d at 455–56

There is substantial evidence in the record supporting the ALJ's decision concerning Plaintiff's RFC and the ALJ applied the correct legal standard in assessing the weight to give Plaintiff's treating physician opinion.

**Ability to Perform Past Relevant Work**

Plaintiff argues that there is not substantial evidence to support the ALJ's finding that she can perform her past relevant work or adjust to new work. Plaintiff asserts that the ALJ erroneously relied on the vocational expert's opinion instead of making a full analysis of the physical demands of the job in relation to her residual functional capacity.

Here, the ALJ presented the vocational expert with a hypothetical of an individual with Plaintiff's physical residual functional capacity. The vocational expert opined that the individual could perform Plaintiff's past relevant work as a data entry operator. Ms. Skinner further

testified that her opinion was consistent with the Dictionary of Occupational Titles. An ALJ can rely on the vocational expert's testimony in finding that a position exists for the claimant. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Plaintiff's assertion of error lacks merit.

In this case, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed. It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and that this social security action is **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this**
**Sep 29, 2016**

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE